1  David M. deRubertis, State Bar No. 208709
   Tyler F. Clark, State Bar No. 258309
2  **The deRubertis Law Firm, PLC**
3  4219 Coldwater Canyon Avenue
   Studio City, California  91604
4  Telephone: (818) 761-2322
5  Facsimile:  (818) 761-2323
6  E-Mail: David@deRubertisLaw.com | Tyler@deRubertisLaw.com

7  Mindy J. Lees, State Bar No. 151087
8  The Law Offices of Mindy J. Lees, A Professional Corporation
   3940 Laurel Canyon Blvd., Suite 1516
9  Studio City, California  91604
10 Telephone: (818) 383-0610
   Facsimile: (818) 495-2478
11 E-Mail: mindy@mindylees.com
12
13 Attorneys for Plaintiff
   Catherine A. Zulfer
14
                 **UNITED STATES DISTRICT COURT**
15
                 **CENTRAL DISTRICT OF CALIFORNIA**
16

17

18 CATHERINE A. ZULFER,                    Case No.: CV12-08263 MMM(SHx)

19                                          )
20               PLAINTIFF,                 )   COMPLAINT FOR:
                                            )
21        VS.                               )   1. Violation of Whistleblower
                                            )      Protection under the Sarbanes-
22                                          )      Oxley Act (18 U.S.C. §1514A, et
                                            )      seq.);
23 PLAYBOY ENTERPRISES, INC. AND            )   2. Violation of California Labor
   DOES 1 THROUGH 10, INCLUSIVE,            )      Code §1102.5 (including
24                                          )      remedies under the Labor Code
25               DEFENDANTS.                )      Private Attorney Generals Act of
                                            )      2004);
26                                          )   3. Age Discrimination in Violation
27                                          )      of California Fair Employment
                                            )      and Housing Act (Cal. Gov.
28                                          )

                                  1

| | |
|---|---|
| ) | Code §§12940(a) & 12941); |
| ) | 4. Wrongful Termination in |
| ) | Violation of Public Policy; and |
| ) | 5. Waiting Time Penalties for |
| ) | Failure to Pay all Wages Due at |
| ) | Time of Termination (Cal. Labor |
| ) | Code §203). |
| ) | |
| ) | **JURY TRIAL DEMAND** |
| ) | |
| ) | |

## INTRODUCTION

1.    This is an individual action brought by Plaintiff Catherine A. Zulfer against her former employer Playboy Enterprises, Inc. ("Playboy") for violation of The Sarbanes-Oxley Act of 2002, codified at 18 U.S.C. § 1514A ("Sarbanes-Oxley"), violation of the California whistleblower protection statute, age discrimination and wrongful termination in violation of public policy.  Plaintiff, a long-term, high performing executive in Playboy's Corporate Accounting Department, was terminated in retaliation for reporting to company management about actual and suspected frauds and improprieties involving financial and accounting matters and corporate governance, and as part of a campaign to reduce costs by terminating older workers.

1

## PARTIES

2

3

4       2.    Plaintiff Catherine A. Zulfer is, and at all relevant times has been, a lawful

5   resident of the State of California.  Plaintiff was employed by Playboy for

6       approximately thirty years.  She worked for Playboy in Los Angeles, California for

7

8   the last twenty-four years of her employment, performing various accounting

9       functions.   For the last eighteen months of her employment, Plaintiff served as

10

11  Playboy's Senior Vice President, Corporate Controller.

12      3.    Defendant Playboy is a Delaware Corporation, with headquarters and

13

14  principal place of business in Beverly Hills, California.

15      4.    At all relevant times, defendant Playboy was a publicly-held and publicly-

16
    traded corporation, listed and traded on the NYSE until March 2011 when it became a
17

18  private corporation.

19      5.    Plaintiff does not know the true names and capacities of defendants sued as

20
    Does I through 50.  Plaintiff will amend the complaint to show the true names of each
21

22  such defendant when their identities have been ascertained.  Each of the Doe

23
    defendants encouraged, participated in, and/or ratified and approved the conduct
24

25  complained of.  Each of the Doe defendants was at all relevant times, the agent,

26
    employee or representative of one or more of the named defendants and/or the other
27

28  Doe defendants, and was acting within the course and scope of such relationship.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

1

2
## EXHAUSTION OF REMEDIES

3

4    6.    On February 6, 2012, Plaintiff filed a timely complaint under the Sarbanes-

5    Oxley with the Department of Labor's Occupational Health and Safety

6
7    Administration ("OSHA").   The Department of Labor did not issue a final decision

8    on the complaint within 180 days of the filing of the administrative claim, without

9
10   any fault of Plaintiff, thereby entitling Plaintiff to file this action in federal court.

11   7.    On or about January 18, 2012, Plaintiff served timely notification to the

12   California Labor and Workforce Development Agency setting forth the nature of her

13
14   claims and her intention to seek remedies under California's Labor Code Private

15   Attorney Generals Act (Cal. Labor Code §2698, et seq.).   On or about February 21,

16
17   2012, Plaintiff received notification from the Labor and Workforce Development

18   Agency that it did not intend to investigate Plaintiff's claims.

19   8.    Plaintiff has filed a timely charge of discrimination with the California

20
21   Department of Fair Employment and Housing, and has received a "right-to-sue"

22   notice for all state law discrimination claims alleged herein.  This suit is brought

23
24   within one year of Plaintiff's "right-to-sue" letter.

25

26

27

28

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over the action because one of Plaintiff's claims arise under a federal statute – namely, the Sarbanes-Oxley Act, which vests federal jurisdiction in the District Court.  Venue is appropriate because the actions which form the basis for Plaintiff's claims occurred in Los Angeles, which is within this District.

## FACTS RELEVANT TO CLAIMS ALLEGED HEREIN
### A. Background of Plaintiff's employment at Playboy

10.  Plaintiff holds a Bachelor of Arts degree from Loyola University of the South with a concentration in accounting.  She also received her Certified Public Accountant certificate in Illinois.  With the exception of a brief leave of absence, Plaintiff worked for Playboy in various accounting positions for the approximately thirty years.  Plaintiff earned numerous promotions, received positive feedback for her work performance, and got along well with a number of different Corporate Controllers and Chief Financial Officers with whom she worked.

11.  In accordance with the Sarbanes-Oxley, Playboy trained Plaintiff in establishing proper procedures and controls to ensure compliance with the Act's requirements.  Playboy contracted with an outside compliance firm, Grant Thornton,

to provide education and to maintain its Sarbanes-Oxley compliance. Ms. Zulfer attended several training sessions on Sarbanes-Oxley compliance and communicated regularly with Grant Thornton. She also communicated often with Playboy's auditing firm, Ernst & Young, to verify that proper controls and accounting methods were utilized. An inherent part of the Sarbanes-Oxley training and controls included directives to adhere to Generally Accepted Accounting Principles ("GAAP").

### B. Playboy's corporate governance changes

12. Beginning in 2009, Playboy made significant changes in the governance of the Company. In July 2009, Scott Flanders ("Flanders") became the new Chief Executive Officer. Within the first year of his employment, several allegations of sexual harassment and other improprieties were made against Flanders. In April 2010, Flanders chose Christoph Pachler as the CFO for Playboy. Plaintiff reported directly to Pachler and they worked together for several months with no problems. In fact, Pachler praised Plaintiff for her performance and (to Plaintiff's knowledge) invited Plaintiff to all relevant corporate meetings.

**C. Pachler pressures Plaintiff to engage in suspect accounting practices by accruing and paying $1,000,000 in corporate executive bonuses without Board of Director approval**

13.  In October 2010, Pachler instructed Plaintiff to accrue $1,000,000.00 in discretionary bonuses for various corporate executives for the third quarter of 2010 without any approval of Playboy's Board of Directors ("Board").  Pachler and CEO Flanders were scheduled to receive the vast majority of this $1,000,000.00.  In the approximately three decades that Plaintiff had worked for Playboy, to Plaintiff's knowledge the Board always had to vote and approve of discretionary bonuses before they were accrued or paid.  Moreover, Playboy suffered significant losses in 2010, so there did not appear to be a legitimate basis to pay discretionary bonuses – let alone, large ones – in that year.

14.  Moreover, by this point in time, Plaintiff had already learned of facts and allegations regarding misconduct by CEO Flanders and she was reasonably suspect of his motives.  She was extremely concerned that CFO Pachler and/or CEO Flanders were attempting to effectively embezzle, steal or convert Playboy assets.  In the least, Plaintiff reasonably believed that approving or paying bonuses without Board approval would be dishonest to shareholders and violate Playboy governance and GAAP.  Accordingly, Plaintiff objected to Pachler that she would not accrue the $1,000,000.00 without the necessary Board approval.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

15.  In or about January 2011, Pachler again demanded that Plaintiff accrue the $1,000,000.00 in bonuses without the approval of Playboy's Board.  Pachler demanded the accrual for the fourth quarter of 2010, which meant that the bonuses were to be distributed soon thereafter.  Plaintiff again reminded Pachler that she could not – and would not – approve or pay bonuses without the required approval of Playboy's Board.  Plaintiff was even more concerned at this point because three months had passed and Pachler had made no effort to secure the Board's approval.  Pachler continued to pressure Plaintiff and tried to intimidate her so that she would comply with his request.

### D. Plaintiff reports Pachler's improper conduct

16.  Plaintiff reasonably believed that Pachler and Flanders were trying to unlawfully obtain bonuses and felt that it was her legal, ethical and business responsibility to report this conduct pursuant to Sarbanes-Oxley and other applicable state and/or federal laws.  Thus, on or about January 14, 2011, Plaintiff reported Pachler's repeated requests that she in engage in suspect accounting practices – including to Playboy's General Counsel, Howard Shapiro, and to Playboy's outside SEC counsel, Rodd Shchrieber.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

### E. Pachler and Playboy immediately retaliate

17.   In January 2011, almost immediately on the heels of Plaintiff's report of Pachler's misconduct, Pachler began retaliating against Plaintiff, including (without limitation and merely by way of example) Pachler: stopped talking to Plaintiff and ostracized her instead; excluded Plaintiff from meetings and discussions that she would normally be included in and that directly impacted her job responsibilities; withheld crucial information that Plaintiff needed to carry out her corporate accounting responsibilities; set Plaintiff up to fail by eliminating approximately fifteen positions from the corporate accounting staff in Chicago and requiring Plaintiff to assume these duties in Los Angeles with little or no help.

### F. Pachler announces an age discriminatory plan to terminate long term, older workers

18.   In addition to the foregoing described wrongful conduct, Pachler also announced a discriminatory plan to rid the workforce of older, long term employees. Specifically, Pachler reported that Playboy intended to terminate or lay-off employees who had been with the company for more than ten years – a plan that would intentionally or, at least, predictably, impact older workers who naturally tended to have longer tenure with the company.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

### G. The retaliatory and discriminatory treatment of Plaintiff continues, and culminates in her termination

19.   This pattern of retaliation and discrimination continued (by the acts described above as well as others) until Playboy ultimately terminated Plaintiff's employment on December 31, 2011.  Playboy deemed Plaintiff's termination a "layoff."  However, this was a pretext for what actually was retaliation against Plaintiff for exposing Pachler's attempt to engage in deceptive accounting practices and for Playboy's desire to discriminate on the basis of age.  This is evidenced by, *inter alia*, the following facts:

- Plantiff had overwhelmingly positive feedback throughout her approximately thirty year employment with Playboy.

- Plaintiff's position of Corporate Controller was not eliminated,

- Before Plaintiff exposed Pachler's attempts to engage in deceptive accounting practices, Pachler praised Plaintiff and gave her assurances that she would continue as the Corporate Controller after restructuring.

- Before Plaintiff exposed Pachler's attempts to engage in deceptive accounting practices, Pachler criticized Plaintiff's subordinate (John McDonald) and wanted to terminate McDonald.

- After Plaintiff exposed Pachler, she was slated for layoff instead of her subordinate, John McDonald, even though Plaintiff was currently performing