1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   JENNIFER G. REDMOND, Cal. Bar No. 144790
3  jredmond@sheppardmullin.com
   MORGAN P. FORSEY, Cal. Bar No. 241207
4  mforsey@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4109
   Telephone:  415-434-9100
6  Facsimile:  415-434-3947

7  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
8      Including Professional Corporations
   JOHN P. STIGI III, Cal. Bar. No. 208342
9  jstigi@sheppardmullin.com
   1901 Avenue of the Stars, 16th Floor
10 Los Angeles, California 90067
   Telephone:  310-228-3700
11 Facsimile:  310-228-3900

12 Attorneys for Defendant
   PLAYBOY ENTERPRISES, INC.
13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                   WESTERN DIVISION

17 CATHERINE A. ZULFER,                Case No. CV12-08263-MMM (SHx)

18              Plaintiff,             **DEFENDANT PLAYBOY
                                       ENTERPRISES, INC.'S REPLY
19      v.                             MEMORANDUM IN FURTHER
                                       SUPPORT OF ITS MOTION TO
20 PLAYBOY ENTERPRISES, INC. and       DISMISS PLAINTIFF'S FIRST AND
   DOES 1 through 10, inclusive,       SECOND CAUSES OF ACTION,
21                                     AND TO STRIKE ALLEGATIONS
              Defendants.              PURSUANT TO FED. R. CIV. P.
22                                     12(b)(6) AND 12(f)**

23                                     Date:       February 11, 2013
                                       Time:       10:00 a.m.
24                                     Judge:      Hon. Margaret M. Morrow
                                       Courtroom:  780
25
                                       Trial Date:  None Set
26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ......................................................................................... 1

II. ARGUMENT.............................................................................................. 5

    A.    Zulfer Must Plead Particularized Facts Showing that Her Claim is Plausible, Not Merely Possible, and Tending to Exclude Alternative, Non-Wrongful Explanations for Defendants' Alleged Conduct ....................................................................................... 5

    B.    Zulfer Fails to State a SOX Claim Under Twombly/Iqbal and Rule 9(b) ................................................................................................ 7

        1.    Zulfer Fails to Plead an Objectively Reasonable Belief of an Existing SOX Violation ................................................... 7

        2.    Zulfer Fails to Plead an Objectively Reasonable Belief that Flanders and Pachler Were Engaged in Shareholder Fraud ......... 9

        3.    Zulfer Fails to Plead an Objectively Reasonable Belief that Flanders and Pachler Were Engaged in a Violation of SEC Rules................................................................................... 16

    C.    Zulfer Fails to State a Claim for Violation of Labor Code Section 1102.5 ............................................................................................. 21

    D.    Zulfer Offers No Basis for Denying Playboy's Motion to Strike ........ 22

        1.    Allegations Pertaining to the SOX Claim Must be Stricken From Zulfer's Wrongful Termination Cause of Action............. 22

        2.    Zulfer's Irrelevant Allegations Against Scott Flanders Must Be Stricken.......................................................... 23

    E.    Zulfer Should Be Denied Leave to Amend Because She Cannot Cure the Defects in the Complaint ....................................................... 23

III. CONCLUSION ......................................................................................... 24

SMRH:407962721.1

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Allen v. Administrative Review Board
    514 F.3d 468 (5th Cir. 2008) ................................................................ 9, 10, 12

Ashcroft v. Iqbal
    556 U.S. 662 (2009).................................................................................. 5, 6, 7

Bell Atlantic Corp. v. Twombly
    550 U.S. 544 (2007)........................................................................................5

In re Century Aluminum Co. Sec. Litig.
    ___ F.3d ___, 2013 U.S. App. LEXIS 24 (9th Cir. Jan. 2, 2013) .............. 5, 6, 7

Day v. Staples, Inc.
    555 F.3d 42 (1st Cir. 2009)................................................................... 9, 10, 14

DSAM Global Value Fund v. Altris Software, Inc.
    288 F.3d 385 (9th Cir. 2002) ........................................................................ 13

Ernst & Ernst v. Hochfelder
    425 U.S. 185 (1975)...................................................................................... 20

In re GledFed, Inc. Sec. Litig.
    42 F.3d 1541 (9th Cir. 1994) (en banc) ................................................... 13, 18

Livingston v. Wyeth, Inc.
    520 F.3d 344 (4th Cir. 2008) .................................................................. 7, 8, 20

Mahony v. Keyspan Corp.
    Case No. 04 CV 554 SJ, 2007 WL 805813 (E.D.N.Y. Mar. 12, 2007)............. 10

Mallory v. JP Morgan Chase & Co.
    2009 WL 6470454 (U.S. Dep't of Labor ALJ Nov. 20, 2009) ........................ 18

Mathews v. Centex Telemanagement, Inc.
    Case No. C-92-1837-CAL, 1994 U.S. Dist. LEXIS 7895 (N.D. Cal. June
    8, 1994) ............................................................................................... 13, 18

Morefield v. Exelon Services, Inc.
    2004 WL 5030303 (U.S. Dep't of Labor ALJ Jan. 28, 2004) .......................... 19

-ii-

In re Nat'l Golf Props. Sec. Litig.
  Case No. CV 02-1383-GHK(RZx), 2003 U.S. Dist. LEXIS 4321 (C.D.
  Cal. Mar. 18, 2003) ............................................................................... 12

Schneider v. California Dep't of Corrections
  151 F.3d 1194 (9th Cir. 1998) ............................................................. 16

In re Silicon Graphics, Inc. Sec. Litig.
  183 F.3d 970 (9th Cir. 1999) ........................................................ 11, 12

Smith v. Corning Inc.
  496 F. Supp. 2d 244 (W.D.N.Y. 2007) ................................................ 10

In re Software Toolworks, Inc.
  50 F.3d 615 (9th Cir. 1994) ................................................................. 13

Thor Power Tool Co. v. Comm'r
  439 U.S. 522 (1979) ...................................................................... 13, 18

Van Asdale v. International Game Tech.
  577 F.3d 989 (9th Cir. 2009) ............................................................ 2, 9

Vess v. Ciba-Geigy Corp. USA
  317 F.3d 1097 (9th Cir. 2003) ............................................................... 7

Walton v. NOVA Info. Sys.
  Case No. 3:06-CV-292, 2008 US Dist. LEXIS 29944
  (E.D. Tenn. Apr. 11, 2008) ..................................................................... 8

Wiest v. Lynch
  No. 10 Civ. 3288, 2011 WL 5572608 (E.D. Pa. Nov. 16, 2011) ...................... 18

STATE CASES

Collier v Superior Court
  228 Cal. App. 3d 1117 (2003) ............................................................. 22

Colores v. Board of Trustees
  105 Cal. App. 4th 1293 (2003) ............................................................ 21

Franklin v. Monadnock Co.
  151 Cal. App. 4th 252 (2007) .............................................................. 23

-iii-

STATE CASES (Cont'd)

Gardenhire v. Housing Authority
    85 Cal. App. 4th 236 (2000) ................................................................... 21

Haney v. Aramark Uniform Services, Inc.
    121 Cal. App. 4th 623 (2004) ................................................................ 23

Sullivan v. Delta Airlines, Inc.
    58 Cal. App. 4th 938 (1997) .................................................................. 23

FEDERAL STATUTES & RULES

17 C.F.R. § 240.13a-15 ............................................................................ 3, 16
17 C.F.R. § 240.13b2-1 ............................................................................ 4, 17

15 U.S.C. § 78m (Securities Exchange Act of 1934) ............................. 3, 4, 16-20

18 U.S.C. § 1341 ............................................................................................ 17
18 U.S.C. § 1343 ............................................................................................ 17
18 U.S.C. § 1344 ............................................................................................ 17
18 U.S.C. § 1348 ............................................................................................ 17
18 U.S.C. § 1514A ........................................................................................... 7
18 U.S.C. § 1514A(a)(1) ......................................................................... 16, 19

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................................. 5
    Rule 9(b) ..................................................................................................... 7

Sarbanes-Oxley Act ("SOX") ....................................... 1-3, 7-11, 16, 19-24

Securities Act of 1933 § 11 ......................................................................... 6

STATE STATUTES

California Labor Code
    § 1102.5 ......................................................................................... 5, 21, 24
    § 1102.5(b) ........................................................................................ 21, 22
    § 1102.5(c) ................................................................................................ 21

OTHER AUTHORITIES

Jeffrey R. Haber, Accounting Demystified 91 (2004)............................... 13

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

# I. INTRODUCTION

Plaintiff Cathy Zulfer ("Zulfer") sued defendant Playboy Enterprises, Inc. ("Playboy" or the "Company") as self-styled Sarbanes-Oxley Act ("SOX") whistleblower.  Zulfer claims that she was "extremely concerned" that Playboy's Chief Executive Officer, Scott Flanders ("Flanders"), and Chief Financial Officer, Christoph Pachler ("Pachler"), were attempting to "embezzle, steal or convert Playboy assets" by somehow forcing or tricking the Company and its Board of Directors to pay them large bonuses that she personally did not feel that they earned. What does she allege Flanders and Pachler actually did in their supposed attempt to "embezzle, steal or convert Playboy assets"?  Zulfer's sole specific, factual allegation is that Pachler twice requested that she accrue (that is, record as an expense on the Company's books, but not actually pay) an amount for 2010 incentive bonuses before Playboy's Board of Directors ("Board") formally approved the amount of the 2010 bonus pool.  She offers —

- <u>no</u> allegation that Flanders or Pachler went behind her back to make the accrual;

- <u>no</u> allegation that Flanders or Pachler actually stole any money;

- <u>no</u> allegation that Flanders or Pachler created phony documents;

- <u>no</u> allegation that Flanders or Pachler misled the Board or the Company's auditors;

- <u>no</u> allegation that she did anything to confirm her position – e.g. <u>no</u> allegation that she checked with the Board or Compensation Committee as to the propriety of the requested accrual; and

- <u>no</u> allegation that the Board did not approve the bonus payments (which it did shortly thereafter and in the normal course of the Company's governance process).

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

1   Her <u>only</u> factual allegation is that Pachler twice asked her to make an accrual in the
2   Company's internal accounting records, and that she said no, apparently because she
3   believed that Board approval in advance of the accrual was required.  That's it.

4        This allegation falls far short of what is required to state a claim for relief
5   under the SOX whistleblower provisions — specifically, facts showing that Zulfer
6   had an objective reasonable belief that Pachler's requests to make an accrual rose to
7   the level of one or more of the six enumerated categories of wrongdoing under the
8   statute:  (1) mail fraud; (2) wire fraud; (3) bank fraud; (4) securities fraud; (5) a
9   violation of a Securities & Exchange Commission ("SEC") rule or regulation; or (6)
10  violation of federal law relating to shareholder fraud.  <u>See Van Asdale v.</u>
11  <u>International Game Tech.</u>, 577 F.3d 989, 996 (9th Cir. 2009) (citing 18 U.S.C.
12  § 1514A(a)(1)).

13       Zulfer failed to identify in the Complaint which of these categories she was
14  invoking.  Accordingly, in moving to dismiss, Playboy made an educated guess that
15  she was proceeding under the sixth "catch-all" category, a violation of federal law
16  relating to shareholder fraud.  With respect to this sixth category and as
17  demonstrated in our opening memorandum, Zulfer failed to plead facts showing that
18  (1) that she had a reasonable belief that Flanders' and Pachler's actions constituted
19  (or even threatened) fraud on Playboy's shareholders; and (2) a false statement was
20  issued to shareholders, both of which are required showings.  Zulfer does not and
21  cannot offer any basis other than speculation to suggest that accruing a bonus
22  expense before Board approval is wrong and, thus, the mere fact of a request to do
23  so can be presumed to be false or fraudulent. At most, whether to accrue a bonus is
24  an accounting judgment with which she apparently disagreed.  That is not fraud.
25  Given her self-professed experience as an accountant, she should have and would
26  have known that.  Thus, she could not have had a reasonable basis to suspect the
27  requests for an accrual amounted to fraud.

28

Another fatal deficiency is that no false statement ever was issued to shareholders. Zulfer argues that the reason no false statement was issued to shareholders was that she stopped the "fraud" by not making the accrual before Board action. But the chain of events that would have to occur for the court to consider this a reasonable inference is too far – in effect, it is a "chain of speculation." The Company issued its 2010 financial statements publicly in mid-February 2011, after the Board made its bonus pool decisions and after the Company's outside auditors had a chance to review the financials. Even if the Board had not approved the bonus pool, Zulfer offers no factual allegation supporting a reasonable basis to believe that any inaccurate accrual would not have been revised in the ordinary course before the financials were issued to shareholders. In the ordinary course, the Board would vote on the bonus pool before the financials were issued to shareholders and the auditors would review the Company's books and financial statements before the financials were issued to shareholders. In light of this, it would be implausible to infer that Flanders and Pachler intended to commit fraud on the shareholders, or were deliberately reckless as to the risk of misleading shareholders, at the time of the requested accruals. It is likewise implausible to infer that Zulfer's belief that the requested accrual threatened a fraud on Playboy's shareholders was objectively reasonable.

Perhaps recognizing that she cannot adequately plead a SOX claim based on the sixth category, Zulfer attempts in her opposition to recast her Complaint by relying heavily on the fifth category of SOX, a violation of an SEC rule or regulation. Zulfer points to SEC Rule 13a-15 promulgated under Section 13 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78m. The facts alleged in the Complaint, however, do not come close to pleading a violation of Rule 13a-15. That rule governs the maintenance and evaluation of systems of internal disclosure and financial controls. See 17 C.F.R. § 240.13a-15. Zulfer does not allege that Playboy failed to implement, maintain or evaluate its systems of internal

-3-

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

1    disclosure and financial controls.  Instead, Zulfer alleges that Pachler followed the

2    normal process for requesting an accrual, by his requests to her.  Again, there is no

3    allegation (nor could there be) that Pachler bypassed her to make the accrual.

4         Further, although Zulfer does not cite SEC Rule 13b2-1 (regarding books and

5    records) in her opposition, the Court should not permit her to amend on the basis of

6    this rule.  Rule 13b2-1 makes it unlawful for any person to "falsify or cause to be

7    falsified, any book, record or account subject to section 13(b)(2)(A) of the" 1934

8    Act.  17 C.F.R. § 240.13b2-1.  Again, an expense accrual is not "false" just because

9    the amount of the expense might turn out to be different.  By definition, an accrual

10   for an expense is entered on the books before payment actually is made.  It is

11   essentially an estimate, whose amount is subject to some level of uncertainty.

12   Zulfer readily acknowledges this, recognizing in her opposition that accounting

13   rules call for an accrual when the expense is "likely" (not "certain") and when the

14   amount is "reasonably estimable" (not "definitively quantified").  Both are judgment

15   calls.  This was, at most, a difference of opinion about booking a reserve for a future

16   contingent liability.  A mere difference of opinion regarding an accounting judgment

17   does not establish fraud or create a falsehood in violation of SEC rules or

18   regulations, and certainly does not move Zulfer's claim into the zone of plausibility.

19        Worse here, is that the sole alleged basis for Zulfer's opinion appears to be

20   her personal view that Flanders and Pachler did not deserve bonuses.  But it was not

21   up to her to decide her bosses' compensation.  As she acknowledges, that was the

22   Board's decision.  It is the height of hypocrisy for Zulfer to complain now about

23   phantom attempts by Flanders and Pachler to bypass internal controls when it was

24   she herself who sought to do precisely that by substituting her judgment for that of

25   the Company's Board of Directors.  In short, the facts alleged in the Complaint (as

26   distinct from Zulfer's speculation) fail to show "more than a sheer possibility" that

27   she reasonably could have believed that Flanders and Pachler were acting

28   unlawfully and fail to "exclude the possibility" that Zulfer should have known

-4-

1  Pachler's requests for an accrual were within reasonable accounting judgment
2  consistent with the Company's internal accounting controls.

3       With respect to Zulfer's California Labor Code § 1102.5 claim, Zulfer
4  concedes that she failed to make a report to a qualified governmental or law
5  enforcement agency.  Instead, she makes the novel argument that Playboy should be
6  considered a government agency because it has certain governmental "reporting
7  obligations."  This argument has zero support in any authority and would require a
8  rewrite of the California Labor Code.  Finally, Zulfer offers no reasoned basis for
9  denying Playboy's motion to strike irrelevant and scandalous allegations from the
10  Complaint.

11       For the reasons set forth in the opening memorandum and below, the Court
12  should grant Playboy's motion in its entirety.

13                              **II.  ARGUMENT**

14  **A.   Zulfer Must Plead Particularized Facts Showing that Her Claim is
        Plausible, Not Merely Possible, and Tending to Exclude Alternative, Non-
15      Wrongful Explanations for Defendants' Alleged Conduct**

16       In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v.
17  Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court established a new standard for
18  evaluating the sufficiency of a complaint under Federal Rule of Civil Procedure
19  12(b)(6).  As the Ninth Circuit recently observed in <u>In re Century Aluminum Co.
20  Sec. Litig.</u>, ___ F.3d ___, 2013 U.S. App. LEXIS 24 (9th Cir. Jan. 2, 2013), the
21  Supreme Court's decisions in <u>Twombly</u> and <u>Iqbal</u> "moved us away from a system of
22  pure notice pleading.  In addition to providing fair notice, the complaint's
23  allegations must now suggest that the claim has at least a plausible chance of
24  success."  <u>Id.</u> at *6 (citing Charles Alan Wright, <u>et al.</u>, Federal Practice and
25  Procedure § 1216, at 71 (Supp. 2012)).  "The plausibility standard," the Supreme
26  Court held, "asks for more than a sheer possibility that a defendant has acted
27  unlawfully."  <u>Iqbal</u>, 556 U.S. at 678 (citations omitted).

28

-5-

To meet this standard, "the complaint must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Century Aluminum</u>, 2013 U.S. App. LEXIS 24, at *6 (quoting <u>Iqbal</u>, 556 U.S. at 678) (emphasis added).  As the Supreme Court explained, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Century Aluminum</u>, 2013 U.S. App. LEXIS 24, at *7.

Significantly, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (citations omitted).  In <u>Century Aluminum</u>, the Ninth Circuit applied this concept in affirming the dismissal of a claim under Section 11 of the Securities Act of 1933 on the ground that plaintiffs failed to show that the shares they purchased were traceable to the stock offering made under the challenged prospectus.  The complaint's defect, the Court explained, was plaintiffs' failure to plead "facts tending to exclude the possibility that the alternative explanation [suggested by defendant] is true":

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are "merely consistent with" their favored explanation but are also consistent with the alternative explanation. <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks omitted).  Something more is needed, such as <u>facts tending to exclude the possibility that the alternative explanation is true, see</u> <u>Twombly</u>, 550 U.S. at 554, in order to render plaintiffs' allegations plausible within the meaning of <u>Iqbal</u> and <u>Twombly</u>.  Here, plaintiffs' allegations remain stuck in "neutral territory," <u>Twombly</u>, 550 U.S. at 557.

2013 U.S. App. LEXIS 24, at *9-10 (emphasis added).

-6-

1    Zulfer does not dispute that Rule 9(b) applies to her Complaint; thus, as

2  demonstrated by Playboy in the opening memorandum, Zulfer must plead her claims

3  with the heightened degree of particularity required by Federal Rule of Civil

4  Procedure 9(b).  <u>See</u> Defendant Playboy Enterprises, Inc.'s Notice of Motion and

5  Motion to Dismiss ("Open. Mem.") at 5 (Rule 9(b) requires plaintiff to specify the

6  "who, what, when, where and how" of the alleged fraud) (citing <u>Vess v. Ciba-Geigy</u>

7  <u>Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)).  Courts have long recognized that

8  Rule 9(b) serves to deter nuisance suits and "safeguards defendant's reputation and

9  goodwill from improvident charges of wrongdoing."   Vess, 317 F.3d at 1104

10  (citation omitted).

11    Zulfer's Complaint suffers from the same core defect as the complaint in

12  <u>Century Aluminum</u>:  an absence of particularized factual content suggesting "more

13  than a sheer possibility that a defendant has acted unlawfully" (<u>Iqbal</u>, 556 U.S. at

14  678) or "tending to exclude the possibility" that defendant acted lawfully.  <u>Century</u>

15  <u>Aluminum</u>, 2013 U.S. App. LEXIS 24, at *10.  This defect is exacerbated by her

16  failure to make what are very serious accusations – fraud, embezzlement, theft –

17  against Flanders and Pachler with the particularity required by Rule 9(b).  The Court

18  should infer from the absence of specific factual allegations that facts necessary to

19  support her claim do not exist and could not be alleged in an amended complaint.

20  The Court should dismiss Zulfer's SOX claim, with prejudice.

21  **B.**    **Zulfer Fails to State a SOX Claim Under <u>Twombly/Iqbal</u> and Rule 9(b)**

22     1.    <u>Zulfer Fails to Plead an Objectively Reasonable Belief of an Existing</u>
         <u>SOX Violation</u>

23

24    In the opening memorandum, Playboy demonstrated that Zulfer fails to plead

25  an objective, reasonable belief that defendants were engaged an actual, existing

26  violation of any of the categories in Section 1514A.  <u>See</u> Open. Mem. at 8.  As the

27  Fourth Circuit held in <u>Livingston v. Wyeth, Inc.</u>, 520 F.3d 344, 352 (4th Cir. 2008),

28  "the [SOX] statute requires [plaintiff] to have held a reasonable belief about an

-7-

existing violation, inasmuch as the violation requirement is stated in the present tense:  a plaintiff's complaint must be 'regarding any conduct which [he] reasonably believes constitutes a violation of [the relevant laws].'"  Id. at 352 (citing 18 U.S.C. § 1514A(a)(1)).  In Livingston, the Court recognized that allegations of securities fraud dependent upon a "chain of speculation" do not support a valid SOX claim:

> In order to anticipate a misrepresentation to the FDA, [plaintiff] would
> have to assume that the new training documentation system would not
> actually be implemented by the September 30 commitment date; that
> [defendant] would fail to develop an acceptable legacy plan to afford it
> additional time to close any remaining compliance gaps; and that
> [defendant] would then misrepresent or conceal the true status of the
> program.  This chain of speculation is simply too long to support a
> claim that [defendant] in fact covered up anything and made
> misrepresentations to the FDA or was in the process of doing so, as is
> required to support a violation of the securities laws.

Id. at 354 (emphasis added in part); see also Walton v. NOVA Info. Sys., Case No. 3:06-CV-292, 2008 US Dist. LEXIS 29944, at *25 (E.D. Tenn. Apr. 11, 2008) ("At best, Plaintiff had a 'belief that a violation [was] about to happen upon some future contingency,' namely the failure to comply with database security standards and the failure to make required disclosures.  However, as the Livingston court recognized, such speculative beliefs do not comprise an existing violation as required by [SOX].").

Zulfer's SOX claim is similarly made up of a tenuous "chain of speculation."  A violation could have occurred, according to Zulfer, at some point in the future if, among other things, (a) she or someone else accrued the bonus pool, and (b) the Board did not approve the bonus pool, and (c) she or Pachler did not immediately revise the accrual accordingly, and (d) the auditors did not revise the accrual, and (e) uncorrected financials were issued to shareholders.  Zulfer seems to acknowledge

-8-

the contingent nature of the alleged threatened fraud.  <u>See</u>, <u>e.g.</u>, Plaintiff's

Memorandum of Points & Authorities in Opposition to Playboy's Motion to

Dismiss ("Opp. Mem.") at 20 & n.9 (speculating that shareholder fraud "<u>may have</u>"

occurred "[i]f the bonuses were accrued and left on the books by the February 2011

Form 8-K filing, but no Board approval had occurred") (emphasis added).[1]

Under <u>Livingston</u> and <u>Walton</u>, the acts alleged by Zulfer here to constitute a

violation under SOX (Pachler's two requests for an accrual) are subject to too many

future contingencies and too much speculation to support an objectively reasonable

belief that a violation was in the process of taking place.  As a matter of law,

therefore, the SOX claim must be dismissed.

   2.   <u>Zulfer Fails to Plead an Objectively Reasonable Belief that Flanders and Pachler Were Engaged in Shareholder Fraud</u>

To have an "objectively reasonable belief there has been shareholder fraud,"

Zulfer's "theory of fraud must at least approximate the basic elements of a claim of

securities fraud."  <u>Van Asdale</u>, 577 F.3d at 1001 (quoting <u>Day v. Staples, Inc.</u>, 555

F.3d 42, 55 (1st Cir. 2009)); <u>accord</u> <u>Allen v. Administrative Review Board</u>, 514

F.3d 468, 480 & n.9 (5th Cir. 2008).  As the First Circuit explained in <u>Day</u>, to

successfully state a SOX claim based upon shareholder fraud, "the employee must

have an objectively reasonable belief that the company intentionally misrepresented

or omitted certain facts to investors, which were material and which risked loss."

555 F.3d at 56.  Zulfer does not dispute this standard.

In the opening memorandum, Playboy demonstrated that Zulfer's Complaint

has three main defects in its attempt to "approximate the basic elements of a claim

---

[1]   Playboy submitted with its motion certain of the Company's filings with the SEC which demonstrate the timeline of corporate disclosures relevant to Zulfer's claim.  We explained that the court may take judicial notice of those filings and consider them in making its ruling on this motion to dismiss.  <u>See</u> Open. Mem. at 5-6.  Zulfer does not contest our request that the court take judicial notice of these materials.

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

of securities fraud":  (1) Zulfer fails to identify a misrepresentation communicated to shareholders on which shareholders relied; (2) Zulfer fails to plead facts plausibly suggesting Flanders and Pachler acted with an intent to defraud shareholders or were reckless as to the risk shareholders would be misled; and (3) Zulfer fails to plead any risk of economic loss to shareholders caused by Flanders' and Pachler's alleged misconduct.  See Open. Mem. at 9-15.

As to the first and third points — lack of a misrepresentation to shareholders and lack of economic loss — Zulfer argues that these showings are not required, as it would tend to undermine a claim of a whistleblower who successfully stops a fraud before it is completed.  See Opp. Mem. at 20-21.  Unfortunately for Zulfer, the case law clearly requires an actual communication to shareholders to support a SOX claim predicated on shareholder fraud.  See Day, 555 F.3d at 55 (requiring an actual intentional misrepresentation or omission of facts to investors and at least a risk of loss); id. at 57 (affirming summary judgment dismissing SOX claim where the employee "has not alleged that the numbers he complained were inaccurate . . . were reported to shareholders"); see also Allen, 514 F.3d at 479 ("We find that [plaintiff's] general inquiries concerning SAB-101 compliance in [defendant]'s internal financial documents, which she knew were not released to shareholders, do not constitute protected activity under SOX.") (emphasis added).[2]

Even if a threat of a misrepresentation or omission of facts to shareholders were all that was required, Zulfer fails to allege that as well.  This is not a case where the whistleblower heroically stops the bike messenger seconds before she can

---

[2]  Zulfer relies upon Smith v. Corning Inc., 496 F. Supp. 2d 244 (W.D.N.Y. 2007), and Mahony v. Keyspan Corp., Case No. 04 CV 554 SJ, 2007 WL 805813 (E.D.N.Y. Mar. 12, 2007), to support her assertion that the mere possibility incorrect financial information might eventually make its way to shareholders is sufficient to state a SOX claim predicated on shareholder fraud.  See Opp. Mem. at 21 n.10.  Both of these district court decisions predate the contrary Circuit court decisions in Day and Allen, as well as the Supreme Court decisions in Twombly and Iqbal.  Accordingly, they are not persuasive authority on this point.

1  deliver a fraudulent Form 10-K to the SEC.  Pachler's request that Zulfer enter an

2  accrual on the Company's internal books and records was far removed from the

3  publication of financial statements that go to shareholders.  Numerous checks and

4  balances, including Board approvals and auditor review, stood between Pachler's

5  accrual requests and eventual issuance to shareholders of the Company's financial

6  statements.  The only way Zulfer could possibly connect Pachler's two requests for

7  accrual to these two "basic elements of a claim of securities fraud" is to engage in

8  the kind of "chain of speculation" rejected by the courts as insufficient under SOX.

9  See, e.g., Opp. Mem. at 20 & n.9 (speculating that shareholder fraud "may have"

10  occurred "[i]f the bonuses were accrued and left on the books by the February 2011

11  Form 8-K filing, but no Board approval had occurred").  The "sheer possibility" that

12  incorrect accruals might eventually find their way into financial statements and

13  mislead shareholders does not pass muster under Twombly/Iqbal.

14       As to the second point — scienter — Zulfer fares no better.  As an initial

15  matter, Zulfer cites the wrong standard for inferring scienter in the Ninth Circuit.

16  See Opp. Mem. at 22 (citing ATSI Communications, Inc. v. Shaar Fund, Ltd., 493

17  F.3d 87, 98 (2d Cir. 2007)).  The Ninth Circuit long ago rejected the "motive and

18  opportunity" test applied by the Second Circuit and cited by Zulfer.  See In re

19  Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 974 (9th Cir. 1999) ("Congress

20  intended to elevate the pleading requirement above the Second Circuit standard

21  requiring plaintiffs merely to provide facts showing simple recklessness or a motive

22  to commit fraud an opportunity to do so.").  Thus, in the Ninth Circuit, a securities

23  fraud plaintiff must "state facts that come closer to demonstrating intent, as opposed

24  to mere motive and opportunity."  Id.

25       In Allen, the Fifth Circuit effectively applied the Ninth Circuit scienter

26  standard to a SOX claim based upon shareholder fraud.  The Court held that "[i]n

27  cases involving the sixth 'catch-all' category [of SOX], we conclude that the

28  employee must reasonably believe that his or her employer acted with a mental state

-11-

1    embracing intent to deceive, manipulate, or defraud its shareholders." 514 F.3d at

2    480.  Here, the only remotely relevant, concrete allegations of fact in the Complaint

3    are Pachler's two requests that Zulfer enter an accrual in the internal books and

4    records before the Board formally approved the bonus pool.  The factual allegations

5    in the Complaint here do not support a plausible inference that Zulfer had an

6    objectively reasonable belief that Flanders and Pachler intended to deceive,

7    manipulate or defraud Playboy's shareholders, for two main reasons.

8         First, as discussed above, Flanders, Pachler <u>and Zulfer</u> all were aware that

9    numerous internal controls, including Board approvals, auditor review <u>and Zulfer</u>

10   <u>herself</u>, stood between Pachler's accrual request and eventual issuance to

11   shareholders of the Company's financial statements.  As Zulfer acknowledges,

12   Pachler actually followed proper internal control procedures by requesting that she

13   make the accrual and not bypassing her by doing it himself.  Thus, it is facially

14   implausible to infer from her allegations that Flanders and Pachler knew or were

15   deliberately reckless in not knowing that shareholders would be given false financial

16   information and be misled by it.  <u>See</u> <u>Silicon Graphics</u>, 183 F.3d at 976 (scienter

17   includes "deliberate recklessness," which is defined as "an extreme departure from

18   the standards of ordinary care, and which presents <u>a danger of misleading</u>

19   <u>[shareholders]</u> that is either <u>known to the defendant or is so obvious that the actor</u>

20   <u>must have been aware of it</u>") (emphasis added); <u>see also</u> <u>In re Nat'l Golf Props. Sec.</u>

21   <u>Litig.</u>, Case No. CV 02-1383-GHK(RZx), 2003 U.S. Dist. LEXIS 4321, at *25

22   (C.D. Cal. Mar. 18, 2003) ("To be liable [for securities fraud] a defendant must

23   know or should know that his representations would be communicated to

24   investors.").  And, therefore, it is facially implausible to infer that Zulfer had an

25   objectively reasonable belief that Flanders and Pachler could have had such a state

26   of mind.

27        Second, the nature of the accounting issue itself undermines any inference

28   that Zulfer could have had an objectively reasonable belief that Flanders and Pachler

-12-

1   intended to commit shareholder fraud.  The accounting issue here is an "accrued

2   expense":

> 3   Expenses that are recorded before any bill has been received are called
>
> 4   accrued expenses.  Companies will record accrued expenses in order to
>
> 5   make sure that their financial statements are accurate.  Financial
>
> 6   statements are prepared on the accrual basis, which means that cash
>
> 7   does not have to change hands in order for something to be recorded.

8   Jeffrey R. Haber, Accounting Demystified 91 (2004).  As Zulfer asserts in her

9   opposition, the standard under GAAP governing expense accruals is set forth in

10  Accounting Standards Codification ("ASC") 450-20-25-2.  Under that ASC, an

11  accrual for an expense is appropriate where "(1) the expense likely will be incurred

12  and (2) the amount can be reasonably estimated."  Opp. Mem. at 13 (emphasis

13  added).  GAAP does not require absolute certainty regarding the expense before

14  making an accrual.  As the language of ASC 450-20-25-2 makes clear, when

15  making an accrual for an expense, management must exercise judgment about the

16  likelihood the expense will be incurred and in estimating its amount.

17      The Supreme Court has long recognized that the provisions of GAAP "are far

18  from being a canonical set of rules that will ensure identical accounting treatment of

19  identical transactions. . . . Rather, [they] tolerate a range of 'reasonable' treatments,

20  leaving the choice among alternatives to management."  Thor Power Tool Co. v.

21  Comm'r, 439 U.S. 522, 544 (1979).  Thus, as the Ninth Circuit has observed,

22  because accounting concepts are flexible, circumstances will give rise to fraud only

23  where differences in calculations are the result of a falsehood, and "not merely the

24  difference between two permissible judgments."  In re GledFed, Inc. Sec. Litig., 42

25  F.3d 1541, 1549 (9th Cir. 1994) (en banc); accord DSAM Global Value Fund v.

26  Altris Software, Inc., 288 F.3d 385, 390 (9th Cir. 2002); In re Software Toolworks,

27  Inc., 50 F.3d 615, 627 (9th Cir. 1994); see also Mathews v. Centex

28  Telemanagement, Inc., Case No. C-92-1837-CAL, 1994 U.S. Dist. LEXIS 7895, at

-13-

1  *13-14 (N.D. Cal. June 8, 1994) ("This court need not reconcile those differences in
2  opinion [as to accounting practices], because they are just that; that is, differences of
3  opinion.  They are not evidence of misstatements or material omissions.").

4  <u>Day</u> is illustrative.  The employee in <u>Day</u> had numerous disagreements with
5  management about an assortment of internal processes regarding, among other
6  things, product returns and customer credits.  He alleged that as a result of the
7  processes he believed were defective, internal data were "manipulated" and "the
8  information [the company] sends to Wall Street [wa]s inaccurate."  555 F.3d at 57.
9  The Court rejected the employee's claim.  As the Court explained, "[a] generalized
10 allegation of inaccuracy in accounting is insufficient to establish a reasonable belief
11 in a violation of GAAP, much less a reasonable belief in shareholder fraud."  <u>Id.</u>
12 (citing <u>DSAM</u>, 288 F.3d at 390 ("[T]he mere publication of inaccurate accounting
13 figures, or a failure to follow GAAP, without more, does not establish scienter" in a
14 securities fraud action)).  The Court in <u>Day</u> went on to note that "merely stating in
15 conclusory fashion that a company's books are out of compliance with GAAP
16 would not in itself demonstrate liability" for securities fraud.  <u>Id.</u> (quoting <u>In re</u>
17 <u>Cabletron Sys., Inc.</u>, 311 F.3d 11, 34 (1st Cir. 2002)).  "Claims that there has been
18 accounting fraud thus require evidence <u>beyond a belief in a mere accounting</u>
19 <u>irregularity</u>," the <u>Day</u> Court concluded, "and not even an accounting irregularity can
20 be reasonably alleged here."  <u>Id.</u> (emphasis added).

21     Zulfer's disagreement with Pachler's requests for an accrual reflects, at most,
22 a simple difference of opinion about a reserve for a future expense.  In Pachler's
23 judgment, an accrual before Board approval of the bonus pool was an appropriately
24 conservative approach to booking incentive compensation expense.  In Zulfer's
25 judgment, apparently, an accrual before Board approval of the bonus pool was too
26 conservative an approach to booking incentive compensation expense.  We say
27 "apparently," because Zulfer does not allege that she reviewed the accounting
28

-14-

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

1  literature or did anything whatsoever validate her position on before rejecting

2  Pachler's requests for an accrual.[3]

3      Zulfer fails to demonstrate that Pachler's judgment was outside a "range of

4  'reasonable' treatments" under the circumstances.  Accordingly, under Ninth Circuit

5  law, she fails to demonstrate that Pachler's requests for an accrual plausibly suggest

6  fraud.  As a result, Zulfer's allegations regarding Pachler's requests for an accrual

7  before Board approval of the bonus pool, while arguably consistent with her theory

8  of attenuated fraud, merely reflect the kind of "neutral territory" of allegations that

9  the Courts in Twombly, Iqbal and Central Aluminum observed are insufficient to

10 state a claim.

11     In her opposition memorandum, Zulfer refers to the language of ASC 450-20-

12 25-2 and then asserts in conclusory fashion that booking an accrual before Board

13 approval of the bonus pool violates that provision of GAAP.  She offers no authority

14 to support that assertion that Board approval of the bonus pool was required under

15 GAAP before an accountant could properly determine, in the exercise of sound

16 judgment, that the expense was "likely" and "reasonably estimable."  She also offers

17 no facts (or even reasoned arguments) "tending to exclude the possibility" Pachler's

18 accounting judgment was not an accounting irregularity, but instead was within a

19 range of alternative, reasonable accounting treatments under the circumstances.[4]

20 _____

21 [3] Even assuming that booking an accrual before Board approval of the bonus pool
   differed from past practice (see Opp. Mem. at 11), a change from past practice
22 does not suggest that the new practice is wrong under GAAP — any more than it
   might suggest the opposite, i.e., that the new practice corrected a longstanding
23 wrong practice under GAAP.  This allegation, therefore, is neutral.

24 [4] As noted in our opening memorandum, Zulfer's unsubstantiated "suspicions" of
   Flanders' and Pachler's intentions and her allegations regarding unrelated prior
25 "bad acts" fail to support a plausible inference of scienter.  See Open. Mem. at
   13-14.  Zulfer appears to abandon these allegations in connection with her
26 attempts to demonstrate scienter.  See Opp. Mem. at 22.  Zulfer does now argue
   (without citation to the Complaint) that Pachler's requests for the accrual
27 somehow were "done to pressure the Board to approve bonuses that should not
   have been paid," because, she says, the entry of an accrual would make it "easier
28 for [Flanders and Pachler] to lobby the Board to 'rubber-stamp' their approval."

-15-

1   Zulfer's scienter allegations thus fail under <u>Twombly/Iqbal</u>.  Nor can she fix this

2   deficiency; she is well aware that, in requesting the accrual, Pachler both (1) notified

3   her that that Flanders was in communication with the Board regarding the bonuses

4   and (2) explained that the bonuses could not be paid until Board approval.

5            3.     <u>Zulfer Fails to Plead an Objectively Reasonable Belief that Flanders</u>
                    <u>and Pachler Were Engaged in a Violation of SEC Rules</u>
6

7        Zulfer did not bother to identify in her Complaint which of the six categories

8   of wrongdoing under SOX she was basing her claims.  Perhaps recognizing that she

9   cannot plead a claim under the sixth category (shareholder fraud), Zulfer turns to the

10  fifth category, a violation of an SEC rule or regulation.[5]  Specifically, she points to

11  Section 13 of the Exchange Act and SEC Rule 13a-15 promulgated under Section

12  13 of the 1934 Act, 15 U.S.C. § 78m.[6]

13       The facts alleged in the Complaint, however, do not come close to pleading a

14  violation of Rule 13a-15.  That rule is limited to the description, purpose,

15  maintenance and evaluation of systems of internal disclosure and financial controls.

16  <u>See</u> 17 C.F.R. § 240.13a-15.  Zulfer does not allege that Playboy failed to maintain

17  or evaluate systems of internal disclosure and financial controls as described in Rule

18  13a-15.  To the contrary, her allegation that Pachler twice requested that she book an

---

Opp. Mem. at 15 n.6.  If Zulfer really did hold this view, why didn't she do
directly to any of her many contacts on the Board to warn them?  Probably
because it is speculative nonsense.  After all, the Board went on to approve the
bonuses even though the accrual was never made.  <u>Twombly/Iqbal</u> require the
Court to disregard this type of unsupported speculation in determining whether
plaintiff's claim is plausible on its face.

[5]  Zulfer's attempt to amend her complaint through her opposition brief is improper
and should not be countenanced.  <u>See, e.g.</u>, <u>Schneider v. California Dep't of</u>
<u>Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

[6]  The fifth category of Section 1514A(a)(1) is limited to violations of "rules and
regulations of the SEC."  It does <u>not</u> include violations of statutory law, such as
the 1934 Act itself.  Accordingly, under the fifth category, Zulfer cannot rely
upon alleged violations of Section 13(b) (such as Section 13(b)(5); <u>see</u> Opp.
Mem. at 8)) that are not also violations of SEC rules and regulations.  To the
extent a handful of Zulfer's cases misread the plain language of Section
1514A(a)(1) to include violations of statutory law within the fifth category, the
Court should disregard them as unpersuasive.

-16-

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

1   accrual is consistent with a system of internal controls. Zulfer seems to argue that

2   Rule 13a-15 also addresses acts of purported circumvention of internal controls.

3   <u>See</u> Opp. Mem. at 8. She is wrong. As the plain language of Rule 13a-15 makes

4   clear, the rule does no such thing. In any event, Zulfer acknowledges that, far from

5   circumventing Playboy's internal accounting controls, Pachler <u>followed</u> internal

6   accounting controls by going through her to make the accrual and not bypassing her

7   to make the accrual himself. Accordingly, even if Rule 13a-15 applied to alleged

8   circumvention of internal controls, the allegations of the Complaint would not

9   support such a claim.

10       Zulfer also argues that, in her view, Flanders and Pachler were not entitled to

11   bonuses in light of the Company's 2010 financial performance. Opp. Mem. at 11.

12   Zulfer later concedes that the decision on whether to grant bonuses rested solely

13   with the Board. <u>Id.</u> at 14. If Zulfer's accounting judgment in refusing to book the

14   accrual was clouded by her personal views (or resentment) toward her bosses'

15   bonuses, it was Zulfer, not Pachler, who was disregarding proper internal controls

16   and procedures by seeking to substitute her views over the judgment of the Board.

17       Zulfer does not cite SEC Rule 13b2-1 (regarding books and records) in her

18   opposition, and the Court should not permit her to amend on the basis of this rule.

19   Rule 13b2-1 makes it unlawful for any person to "falsify or cause to be falsified, any

20   book, record or account subject to section 13(b)(2)(A) of the" 1934 Act. 17 C.F.R.

21   § 240.13b2-1. Notably, Rule 13b2-1 does not, by its terms, declare unlawful

22   <u>attempted</u> falsification of books and records. This is different from the mail fraud,

23   wire fraud, bank fraud and securities fraud statutes, all of which include attempts to

24   commit such frauds as violations themselves. <u>See</u> 18 U.S.C. § 1341, 1343, 1344,

25   1348. Here, as Zulfer admits, the accrual was never entered. Thus, no falsification

26   could have occurred. At most, Zulfer alleges an attempted falsification. That is not

27   a violation of Rule 13b-2.

28

-17-

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

Just one of Zulfer's cited cases, <u>Mallory v. JP Morgan Chase & Co.</u>, 2009 WL 6470454 (U.S. Dep't of Labor ALJ Nov. 20, 2009), may have involved an attempt to commit a wrongful act that did not ultimately happen. There, the complainant suspected that a loan officer's submission of a draw request for approximately $17,000 in excess of the amount available on the loan was a potential violation of internal controls. <u>Id.</u> at *2. The complainant approved the draw request for less than the amount requested. <u>Id.</u> at *19. The ALJ's opinion denying summary judgment does not clarify whether the $17,000 was ultimately funded and the loan draw went through as requested, although there is a reference to "the loan officer's decision to submit the draw request himself," apparently bypassing the complainant. Regardless, <u>Mallory</u> is inapposite because the alleged wrongful acts at issue in that case were not violations of Rule 13b2-1, but rather mail fraud, wire fraud and bank fraud. As noted above, those statutes include "attempts" within their definitions. Rule 13b2-1 does not.[7]

Even if "attempted falsification" were within the scope of Rule 13b2-1, Zulfer's allegations still fall short. As discussed above, Ninth Circuit law is settled that a "difference between two permissible [accounting] judgments" is not a "falsehood." <u>GlenFed</u>, 42 F.3d at 1549; <u>see also Mathews</u>, 1994 U.S. Dist. LEXIS 7895, at *13-14 ("differences in opinion" as to accounting practices "are not evidence of misstatements"). In order for Zulfer to show that the requested accrual was a "falsehood," she must demonstrate through well-pled facts that Pachler's judgment that an accrual was appropriate under GAAP was outside a "range of 'reasonable' treatments." <u>Thor Power</u>, 439 U.S. at 544. For the reasons discussed above, Zulfer does not and cannot do so.

---

[7] Administrative law judge decisions are not binding authority on a United States District Court. <u>See Wiest v. Lynch</u>, No. 10 Civ. 3288, 2011 WL 5572608, at *4 (E.D. Pa. Nov. 16, 2011) ("Controlling law means binding precedent—i.e., decisions of the United States Supreme Court or the Court of Appeals.").

1    In an effort to distract the Court from the deficiencies of her Complaint,

2   Zulfer cites an assortment of cases and administrative decisions involving claims

3   under the fifth category in Section 1514A(a)(1), most of which do not engage in any

4   serious or careful analysis of the SOX categories at issue.  See Opp. Mem. at 9-10.

5   Only one of those cases, Morefield v. Exelon Services, Inc., 2004 WL 5030303

6   (U.S. Dep't of Labor ALJ Jan. 28, 2004), arguably involved matters of accounting

7   judgment.  In Morefield, the complainant raised concerns about alleged improper

8   accounting treatment of vacant leases, improper balance sheet adjustments,

9   manipulation of financial forecasts, manipulation of a budget and improper

10   accounting treatment of liabilities.  See id. at *1.  The ALJ's opinion denying

11   summary judgment does not go into any detail about these issues, so it is impossible

12   to determine whether any of them actually involved, as here, a simple difference in

13   accounting judgment.  In any event, without any analysis of Supreme Court or other

14   legal authority, the ALJ concluded summarily that the fifth and sixth categories

15   under SOX "may provide ample latitude to include rules governing the application

16   of accounting principles and the adequacy of internal accounting controls

17   implemented by the publicly traded company in compliance with such rules and

18   regulations."  Id. at *6.  This conclusion is contradicted by the more recent Circuit

19   court authority in Day and Allen, which, as discussed above, require much more

20   from a complainant to state a claim under SOX.

21    In the absence of specific factual allegations "tending to exclude the

22   possibility" that Pachler's accounting judgment was within a range of alternative,

23   reasonable accounting treatments, it is implausible to infer that Zulfer had a

24   reasonable belief that Pachler's requests constituted an attempt to "falsify"

25   Playboy's books and records in violation of Rule 13b2-1.  Zulfer's Complaint is

26   firmly within the "neutral territory" that the Courts in Twombly, Iqbal and Central

27   Aluminum held are insufficient.

28

DEFENDANT'S REPLY MEMO. IN FURTHER
SUPPORT OF MOTION TO DISMISS AND STRIKE

Finally, Zulfer argues that a showing of scienter is not required for her claim for violations of rules promulgated under Section 13 of the 1934 Act.  Opp. Mem. at 19 (citing <u>SEC v. McNulty</u>, 137 F.3d 732, 740-41 (2d Cir. 1998); <u>Mallory</u>, 2009 WL 6470454, at *29).  <u>McNulty</u> (on which <u>Mallory</u> relies) was not a SOX whistleblower case.  It was a civil enforcement proceeding brought by the SEC.  <u>Mallory</u>'s (and thus Zulfer's) reliance on <u>McNulty</u>, therefore, was misplaced.  In fact, the Fourth Circuit in <u>Livingtson</u> held squarely that any claim under the fifth category of SOX must, as with the other five categories, make a showing of <u>fraud</u>:

> We conclude that number (5) also refers to regulations prohibiting fraud.  To conclude otherwise would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions from filing statements.  Moreover, the ambiguity is fully clarified by the context of the whistleblower provision in the Sarbanes-Oxley Act and by the legislative history that indicates that whistleblowing is protected by § 1514A when it relates to "fraud."  <u>See</u>, <u>e.g.</u>, S. Rep. No. 107-146, at 19 (2002) ("Although current law protects many government employees who act in the public interest by reporting wrongdoing, there is no similar protection for employees of publicly traded companies who blow the whistle <u>on fraud and protect investors</u>") (emphasis added); <u>id.</u> (noting that whistleblower provision protects employees who report conduct "which they reasonably believe to be <u>fraudulent</u>") (emphasis added).

520 F.3d at 352 n.1.  "Fraud" under the securities laws connotes knowing or intentional misconduct — <u>i.e.</u>, scienter.  <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 197 (1975).  For the reasons set forth in Section II.B.2, <u>supra</u>, Zulfer's claim based upon the fifth category of SOX fails to show "more than a sheer possibility" that Flanders and Pachler acted with scienter.  Zulfer's fifth category SOX claim must be dismissed.

-20-

**C.      Zulfer Fails to State a Claim for Violation of Labor Code Section 1102.5**

In the opening memorandum, Playboy demonstrated that Zulfer's second cause of action under Section 1102.5 of the California Labor Code should be dismissed. See Open. Mem. at 15. As explained, to state a claim under Section 1102.5(c), the employee must have refused to engage in an act he or she reasonably believed would violate a state or federal statute, rule or regulation; and to state a claim under Section 1102.5(b), the employee must have made a report "to a government or law enforcement agency." Id. (citing Cal. Labor Code § 1102.5(b)). Zulfer fails to allege facts sufficient to show that she refused to participate in an act that would have resulted in a violation SOX (or any other state or federal statute, rule or regulation), and fails to allege that she reported her concerns to a qualifying governmental or law enforcement agency.

Zulfer effectively concedes that to state a claim under Section 1102.5(c) her SOX claim must survive dismissal. See Opp. Mem. at 23. With respect to the statutory requirement that she have made a report to a government or law enforcement agency, Zulfer argues that the Court should ignore the plain language of the statute and expand Section 1102.5(b) to cover her alleged internal report to the Company's General Counsel. As Zulfer acknowledges, however, her only authority for this argument (Gardenhire v. Housing Authority, 85 Cal. App. 4th 236 (2000), and Colores v. Board of Trustees, 105 Cal. App. 4th 1293 (2003)) involved employers that were themselves government agencies. Zulfer nevertheless argues that Playboy should be treated as a government agency because the Company has "its own reporting obligations to the government." Opp. Mem. at 23-24.

Under Zulfer's novel and unprecedented view of Section 1102.5(b), the statute would cover virtually every internal employee complaint, as most, if not all, employers have some reporting obligations to the government, such as reporting income to the Internal Revenue Service and the State Franchise Tax Board, maintaining state licensure, complying with insurance, health and requirements, just

-21-

1  to name a few.  The Court should decline Zulfer's invitation to rewrite Section

2  1102.5(b) to expand its scope so dramatically.

3  **D.   Zulfer Offers No Basis for Denying Playboy's Motion to Strike**

4    1.   Allegations Pertaining to the SOX Claim Must be Stricken From
         Zulfer's Wrongful Termination Cause of Action

5

6        In the event the Court dismisses Zulfer's SOX claim, Zulfer will be unable to

7  allege a wrongful termination cause of action based upon alleged "suspicious"

8  accounting practices.  Accordingly, allegations relating to her SOX claim must be

9  stricken from her separate wrongful termination cause of action.   See Open. Mem.

10 at 16-17.  Zulfer offers nothing of substance in opposition to Playboy's motion to

11 strike, and not one of the cases she cites stands for the proposition that she claims.

12 Rather, Zulfer offers incomplete and distorted quotes and case citations in attempt to

13 mislead the Court.  For example, Zulfer argues that Collier v Superior Court, 228

14 Cal. App. 3d 1117 (2003), held that an internal report involving a criminal act

15 affects the public at large per se.  Opp. Mem. at 24.  That is not accurate.  In Collier,

16 the employee's report concerned a billing scheme that overcharged the employer's

17 customers.  Collier, 228 Cal. App. 3d at 1122-23.  The court held that a wrongful

18 termination claim only lies where the employee's report affects the interests beyond

19 those of the employer.  See id. (plaintiff's report was sufficient to support a

20 wrongful termination claim because it "served not only the interests of his employer,

21 but also . . . the interests of innocent persons who stood to suffer specific harm from

22 the suspected illegal conduct").  Thus, contrary to Zulfer's assertion, Collier in no

23 way supports the notion that an internal complaint, even one that concerns criminal

24 activity, can support a wrongful termination claim, unless it implicates the public at

25 large.  Here, of course, the challenged accounting issue was purely internal and

26 never came close to affecting the Company's shareholders or the public at large.

27 See Section II.B.1, supra.

28

1    Zulfer's discussions of <u>Franklin v. Monadnock Co.</u>, 151 Cal. App. 4th 252

2    (2007); <u>Haney v. Aramark Uniform Services, Inc.</u>, 121 Cal. App. 4th 623 (2004);

3    and <u>Sullivan v. Delta Airlines, Inc.</u>, 58 Cal. App. 4th 938 (1997), are similarly

4    misleading.  Not one of these cases stands for the proposition that an internal report

5    not tied to a benefit that inures to the public can form the basis of a wrongful

6    termination claim.  Accordingly, absent pleading a viable SOX claim, Zulfer's

7    allegations regarding her alleged internal report is an internal matter that has no tie

8    to a public policy, and as such must be stricken.

9         2.    <u>Zulfer's Irrelevant Allegations Against Scott Flanders Must Be
              Stricken</u>

10

11   Playboy properly moves this Court for an order striking allegations in the

12   Complaint about Flanders that have absolutely no bearing on any alleged suspect

13   accounting practices or shareholder fraud, and are an obvious abuse of the litigation

14   privilege.  <u>See</u> Open. Mem. at 17-18.  Tellingly, Zulfer's tepid response to

15   Playboy's motion to strike these impertinent and irrelevant allegations is buried in

16   footnote 14 of her opposition.  <u>See</u> Opp. Mem. at 25 n.14.  Zulfer asserts in a

17   conclusory fashion that her awareness of alleged "improper" conduct by Flanders is

18   relevant to her "suspicions" about Flanders' motives, and to the objective and

19   subjective prongs of the reasonably belief element of her SOX claim.  <u>Id.</u>  Nonsense.

20   Zulfer never bothers to explain the connection between the disputed allegations and

21   her SOX claim, nor does she offer a shred of authority for the proposition that the

22   allegations made against Flanders have bearing on the elements of any of her claims.

23   <u>Id.</u>  Accordingly, Zulfer's allegations regarding Flanders are immaterial, impertinent

24   and scandalous and must be stricken.

25   **E.   Zulfer Should Be Denied Leave to Amend Because She Cannot Cure the
          Defects in the Complaint**

26

27   Based upon the admissions in the Complaint and the undisputed timeline of

28   Playboy's financial disclosures of which this Court can take judicial notice, Zulfer

-23-

1  cannot in good faith allege that she had an objective, reasonable belief that her

2  complaint approximated the elements of a shareholder fraud claim or violation of

3  SEC rules, nor can she plead a claim under Section 1102.5 or wrongful termination

4  (as based on the alleged SOX violation).  Accordingly, dismissal of the first and

5  second causes of action should be with prejudice.

6      In her opposition, Zulfer makes no proffer whatsoever of additional specific

7  facts she would allege in any amended complaint that might save her SOX claim

8  from dismissal.  <u>See</u> Opp. Mem. at 22-23.  The Court has no basis, therefore, on

9  which to conclude that amendment would serve any purpose.  Furthermore, Zulfer

10 does not request leave to amend with respect to her second cause of action under

11 Labor Code § 1102.5, tacitly admitting that she has nothing to add toward that

12 claim.

### III. CONCLUSION

14     For the foregoing reasons, and for the reasons set forth in its opening

15 memorandum, Playboy respectfully requests that this Court (a) dismiss Zulfer's first

16 and second causes of action, with prejudice, (b) strike portions of the fourth cause of

17 action for wrongful termination and (c) strike from the Complaint those allegations

18 that Playboy has identified as immaterial, impertinent and scandalous.

20 Dated:  January 28. 2013         SHEPPARD. MULLIN. RICHTER & HAMPTON LLP

                                 By _____
                                          /s/ Jennifer G. Redmond
22                                       JENNIFER G. REDMOND
                                          JOHN P. STIGI III
23                                        MORGAN P. FORSEY

24                                      Attorneys for Defendant
                                   PLAYBOY ENTERPRISES. INC.

-24-

SMRH:407962721.1                     DEFENDANT'S REPLY MEMO. IN FURTHER
                                     SUPPORT OF MOTION TO DISMISS AND STRIKE